**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JOSEPH GALLANT, TINA HASENOUR and SUSAN BLANKENBERGER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARROW CONSULTATION SERVICES, INC.,<br><br>Defendant. | No. 1:19-cv-00925<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiffs Joseph Gallant, Tina Hasenour, and Susan Blankenberger ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel of record, allege, upon personal knowledge as to themselves and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This lawsuit seeks to recover unpaid overtime compensation for Plaintiffs and similarly situated individuals who work or have worked for Defendant Arrow Consultation Services, Inc. ("ACS" or "Defendant") as Home Managers providing personal care to ACS' clients and who were subject to Defendant's policy of misclassifying them as "exempt" from federal and/or state overtime protections.

2. ACS is an Indiana corporation that provides supported living services for up to 24 hours per day in clients' own homes, structured family caregiving homes, or other similar environments.[1]

3. Plaintiffs and other Home Managers serve ACS' clients with personal hygiene, housekeeping, cooking, purchasing groceries, unskilled nursing care, and transportation.

4. Plaintiffs and other Home Managers frequently work very long hours, including shifts of up to 80 consecutive hours and workweeks of up to 120 hours.

5. Plaintiffs and other Home Managers typically earn between approximately $19,000 and $32,000 per year.

6. Although the Plaintiffs' and Home Managers' primary duties are non-exempt, ACS classifies all Home Managers as exempt from the overtime pay provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"). As a result, ACS has denied its Home Managers proper overtime compensation for hours worked over 40 in a workweek.

7. ACS systematically fails to pay Home Managers wages for time they are required to spend attending meetings and trainings, or training other ACS staff.

8. ACS systematically fails to pay Home Managers wages for time they are required to spend transporting clients outside of the clients' regularly scheduled home care.

9. Plaintiffs bring this action on behalf of themselves and all similarly situated current and former Home Managers who elect to opt in to this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq*., for unpaid overtime compensation.

---

[1] Arrow Consultation Services, Inc., homepage, http://arrowconsultation.com/wp/ (last visited February 28, 2019).

10. Pursuant to principles of supplemental jurisdiction, Plaintiffs also bring this class action, individually and on behalf of others similarly situated, for wage violations under the Indiana Wage Payment Act ("WPA"), Indiana Code 22-2-5-1.

11. The statute of limitations for Plaintiffs' claims was tolled by agreement of the parties beginning on October 27, 2016.

## THE PARTIES

**Plaintiff Gallant**

12. Joseph Gallant is an adult individual who resides in Evansville, Indiana.

13. From approximately April 2013 to May 2013, ACS employed Mr. Gallant as a Direct Services Professional in Evansville, Indiana.

14. From approximately May 2013 to July or August 2013, ACS employed Mr. Gallant as an Assistant Home Manager in Evansville, Indiana.

15. Around July or August 2013, ACS promoted Mr. Gallant to Home Manager. Mr. Gallant was employed as a Home Manager in both Evansville and Terre Haute, Indiana until approximately December 2016.

16. Mr. Gallant's claims and the claims of the putative class and collective were tolled by agreement of the parties beginning on October 27, 2016 and terminating ten days before the filing of this Complaint.

17. As a Home Manager, Mr. Gallant was classified as salaried and exempt from the overtime pay requirements of the FLSA.

18. During his entire tenure, Mr. Gallant frequently worked more than 40 hours per week with an average of 60 to 120 hours per week.

19. Pursuant to ACS' policy and pattern or practice, ACS did not pay Mr. Gallant overtime compensation when he worked as a Home Manager in excess of 40 hours in a workweek. Instead, Mr. Gallant received no payment or payment at a rate less than his regular rate.

20. When Mr. Gallant missed more than a few hours of work in a day, his salary was docked in an amount proportional to the work missed.

21. Mr. Gallant did not earn any wages for time he spent outside of regularly-scheduled shifts attending mandatory trainings and meetings.

22. Mr. Gallant was responsible for transporting ACS' clients to their medical appointments. When these appointments were scheduled outside of his regularly-scheduled shifts, Mr. Gallant did not earn any wages for the time spent transporting ACS' clients.

23. Mr. Gallant was responsible for food shopping for ACS' clients. Because of the nature of their disabilities, he was required to food shop without them. ACS did not pay Mr. Gallant for the time he spent food shopping outside of his regularly-scheduled shifts.

24. Mr. Gallant was subjected to ACS' policy that Home Managers replace any funds that were missing from ACS' clients' accounts. Mr. Gallant spent his own money to replace missing client funds.

25. Plaintiff Gallant is a covered employee within the meaning of the FLSA.

26. A written consent form signed by Plaintiff Gallant is attached hereto as **Exhibit A.**

**Plaintiff Hasenour**

27. Tina Hasenour is an adult individual who resides in Haubstadt, Indiana.

28. From prior to October 2013 until November 2013 and then again from approximately February 2014 to June 2015, ACS employed Ms. Hasenour as a Home Manager in Evansville, Indiana.

29. As a Home Manager, Ms. Hasenour was classified as salaried and exempt from the overtime pay requirements of the FLSA.

30. During her tenure, Ms. Hasenour frequently worked more than 40 hours per week with an average of 60 to 80 hours per week.

31. Pursuant to ACS' policy and pattern or practice, ACS did not pay Ms. Hasenour overtime compensation when she worked as a Home Manager for its benefit in excess of 40 hours in a workweek. Instead, Ms. Hasenour received no payment or a rate less than her regular rate.

32. When Ms. Hasenour missed more than a few hours of work in a day, her salary was docked in an amount proportional to the work missed.

33. Ms. Hasenour did not earn any wages for time she spent outside of regularly-scheduled shifts attending mandatory trainings and meetings, and training other ACS staff.

34. Ms. Hasenour was responsible for transporting ACS' clients to their medical appointments. When these appointments were scheduled outside of her regularly-scheduled shifts, Ms. Hasenour did not earn any wages for the time spent transporting ACS' clients.

35. Ms. Hasenour was subjected to ACS' policy that Home Managers replace any funds that were missing from ACS' clients' accounts. Ms. Hasenour spent her own money to replace missing client funds.

36. Ms. Hasenour is a covered employee within the meaning of the FLSA.

37. A written consent form signed by Ms. Hasenour is attached hereto as **Exhibit B.**

**Plaintiff Blankenberger**

38.  Susan Blankenberger is an adult individual who resides in Evansville, Indiana.

39.  From approximately 2006 to May 2016, ACS employed Ms. Blankenberger as a Home Manager in Evansville, Indiana.

40.  As a Home Manager, Ms. Blankenberger was classified as salaried and exempt from the overtime pay requirements of the FLSA.

41.  During her tenure, Ms. Blankenberger frequently worked more than 40 hours per week with an average of 60 to 80 hours per week.

42.  Pursuant to ACS' policy and pattern or practice, ACS did not pay Ms. Blankenberger overtime compensation when she worked as a Home Manager for its benefit in excess of 40 hours in a workweek.  Instead, Ms. Blankenberger received no payment or a rate less than her regular rate.

43.  When Ms. Blankenberger missed more than a few hours of work in a day, her salary was docked in an amount proportional to the work missed.

44.  Ms. Blankenberger did not earn any wages for time she spent outside of regularly-scheduled shifts attending mandatory trainings and meetings, and training other ACS staff.

45.  Ms. Blankenberger was responsible for transporting ACS' clients to their medical appointments.  When these appointments were scheduled outside of her regularly-scheduled shifts, Ms. Blankenberger did not earn any wages for the time spent transporting ACS' clients.

46.  Ms. Blankenberger was subjected to ACS' policy that Home Managers replace any missing funds from ACS' clients' accounts.

47.  Plaintiff Blankenberger is a covered employee within the meaning of the FLSA.

**Defendant**

48. ACS is a corporation with a principal executive office located at 981 Keystone Way, Carmel, Indiana.[2]

49. At all times relevant, ACS has been the corporate entity listed on Plaintiffs' paychecks.

50. ACS is a covered employer within the meaning of the FLSA and, at all times relevant, employed Plaintiffs and similarly situated employees.

51. ACS applies the same employment policies, practices, and procedures to all Home Managers companywide, including policies, practices, and procedures with respect to the payment of overtime compensation.

52. Upon information and belief, at all times relevant, ACS' annual gross volume of sales made or business done was not less than $500,000.

## JURISDICTION AND VENUE

53. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

54. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

55. This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

56. The Court has supplemental jurisdiction over Plaintiffs' Indiana state law claims, which share a common nucleus of operative fact with their FLSA claims.

---

[2] ACS is accredited to provide supported living services and community integration services throughout Indiana.

57. Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(2) because ACS transacts a substantial amount of business in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## COLLECTIVE ACTION ALLEGATIONS

58. Plaintiffs bring the First Cause of Action, an FLSA overtime claim, on behalf of themselves and all similarly situated persons who work or have worked as Home Managers and similar titles for ACS statewide between October 27, 2013, in accordance with the tolling agreement, and the date of final judgment in this matter, who did not receive overtime compensation or compensation for all hours worked over 40 in a workweek and who elect to opt in to this action (the "FLSA Collective").

59. ACS is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated Home Managers.

60. Consistent with ACS' policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid proper overtime compensation when they worked more than 40 hours in a workweek.

61. Plaintiffs and the FLSA Collective perform or performed substantially the same primary duties.

62. All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by ACS, and/or ACS has been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

63. As part of its regular business practice, ACS has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to

Plaintiffs and the FLSA Collective. This pattern, practice, and/or policy includes, but is not limited to:

      a. willfully failing to pay Plaintiffs and the FLSA Collective proper overtime compensation for hours that they worked in excess of 40 hours per workweek;

      b. willfully misclassifying Plaintiffs and the FLSA collective as exempt from the protections of the FLSA; and

      c. willfully failing to record all of the time that Plaintiffs and the FLSA Collective have worked for the benefit of ACS.

64. ACS is aware or should have been aware that federal law required it to pay Plaintiffs and the FLSA Collective compensation and/or overtime compensation for hours worked in excess of 40 per workweek.

65. Plaintiffs and the FLSA Collective perform or performed the same primary duties.

66. ACS' unlawful conduct has been widespread, repeated, and consistent.

67. The FLSA Collective consists of many similarly situated current and former Home Managers who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Those similarly situated employees are known to ACS, are readily identifiable, and can be located through ACS' records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

68. Plaintiffs bring the Second Cause of Action, the Indiana WPA claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of all persons who are or have been employed as Home Managers and similar titles for ACS between October

27, 2013, in accordance with the tolling agreement, and the date of final judgment in this matter (the "Rule 23 Class").

69. The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

70. Upon information and belief, the size of the Rule 23 Class is at least 40 individuals. Although the precise number of such employees is unknown, the facts on which the calculation of that number depend are currently within the sole control of ACS.

71. ACS has acted or refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

72. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually. These common questions of law and fact include, but are not limited to, whether ACS violated the Indiana WPA by failing to pay members of the Rule 23 Class all wages owed within the time period prescribed by law, and the nature and extent of the class-wide injury and the measure of damages for those injuries.

73. The claims of Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent.

74. Plaintiffs and the Rule 23 Class enjoy the same statutory rights under the Indiana WPA, including the right to receive all wages owed within the time period prescribed by law. Plaintiffs and the Rule 23 Class have all sustained similar types of damages as a result of ACS's failure to comply with the Indiana WPA. Plaintiffs and the Rule 23 Class have all been injured in that they have not received all wages owed within the time period prescribed by law as a result of ACS's common policies, practices, and patterns of conduct.

75. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class. Plaintiffs understand that, as Class Representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately. Plaintiffs recognize that, as Class Representatives, they must represent and consider the interests of the class just as they would represent and consider their own interests. Plaintiffs understand that, in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over the interests of the class. Plaintiffs recognize that any resolution of a class action must be in the best interest of the class. Plaintiffs understand that, in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at a deposition and/or trial. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation. There is no conflict between Plaintiffs and the Rule 23 Class members.

76. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of ACS's violations of the Indiana MWA. The individual plaintiffs lack the financial resources to conduct a thorough examination of ACS's timekeeping and compensation practices and to prosecute vigorously a lawsuit against ACS to recover such damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that could result in inconsistent judgments about ACS's practices.

77. This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3).

**COMMON FACTUAL ALLEGATIONS**

78. Plaintiffs and the FLSA Collective and Rule 23 Class have been victims of ACS' common pattern, practice, and/or policy that violates their rights by denying them wages they are owed.

79. Home Managers were uniformly classified as salaried and exempt from the overtime pay requirements of the FLSA.

80. Home Managers frequently worked more than 40 hours per workweek.

81. ACS was aware that Home Managers frequently worked more than 40 hours per workweek.

82. ACS did not pay Home Managers overtime compensation when they worked in excess of 40 hours in a workweek. Instead, Home Managers received no payment or payment at a rate less than their regular rate.

83. Home Managers frequently were required to pick up shifts for hourly employees or other Home Managers. Home Managers were paid the rate the missing employee was to be paid, either another Home Manager's rate or an hourly employee's rate.

84. When Home Managers missed more than a few hours of work, their salaries were docked in an amount proportional to the work missed.

85. ACS did not pay Home Managers any wages for the mandatory time spent working outside of regularly scheduled hours, such as time spent attending mandatory trainings and meetings, and training other ACS staff.

86. ACS required Home Managers to transport ACS clients to their medical appointments. When these appointments were scheduled outside of their regularly-scheduled shifts, ACS did not pay any wages for the time Home Managers spent transporting ACS' clients.

87. ACS subjected Home Managers to ACS' policy that Home Managers replace any missing funds from ACS' clients' accounts.

88. ACS did not keep accurate records of all the hours Home Managers worked.

89. Home Managers' primary duties were routine, non-exempt tasks including, but not limited to:

   a. taking patients to appointments,
   b. purchasing groceries,
   c. washing laundry,
   d. housekeeping,
   e. cleaning,
   f. cooking meals,
   g. unskilled nursing care,
   h. assisting patients with personal hygiene,
   i. bathing patients,
   j. shampooing and combing patients' hair,
   k. brushing teeth,
   l. trimming patients' nails,
   m. dressing patients, and
   n. providing patients with medication.

90. Home Managers spent the majority of their time performing the same or similar tasks as hourly non-exempt employees.

91. Home Managers' primary duties did not differ substantially from the duties of hourly non-exempt employees.

92. Home Managers' primary duties did not include:

      a.    hiring;

      b.    firing;

      c.    supervising; or

      d.    directing the work of other employees.

93.    Home Managers' primary duties were not directly related to ACS' management or general business operations.

94.    Home Managers' primary duties did not include the exercise of discretion or independent judgment regarding matters of significance.

95.    Home Managers:

      a.    were not involved in planning ACS' long or short-term business objectives;

      b.    could not formulate, affect, implement or interpret ACS' management policies or operating practices;

      c.    did not carry out major assignments that affected ACS' business operations;

      d.    did not have authority to commit ACS in matters that have significant financial impact; and

      e.    could not waive or deviate from ACS' established policies or procedures without prior approval.

96.    Home Managers' primary duties were manual in nature.

97.    The performance of manual duties occupied the majority of Home Managers' working hours.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act–Overtime Wages
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

98.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

99. ACS failed to pay Plaintiffs and the FLSA Collective the overtime compensation to which they are entitled under the FLSA.

100. ACS has engaged in a widespread pattern, practice, and/or policy of violating the FLSA, as described in this Collective Action Complaint.

101. At all relevant times, ACS has been an employer engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(b), (d), (r), and (s).

102. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting regulations, apply to ACS and protect Plaintiff and the FLSA Collective.

103. At all times relevant, Plaintiffs and the FLSA Collective were ACS' employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

104. ACS has failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they are entitled under the FLSA.

105. ACS has engaged in a policy and/or practice of requiring Plaintiffs and the FLSA Collective to replace missing funds from ACS' clients' accounts.

106. The cost of replacing the missing funds contributed to Plaintiffs Gallant, Hasenour and Blankenberger being paid less than the full overtime pay rate, in violation of 29 U.S.C. §§ 201 *et. seq.* and 29 C.F.R. § 531.35.

107. ACS' violations of the FLSA, as described in this Complaint, have been willful and intentional. ACS was aware or should have been aware that the practices described in this Complaint were unlawful.

108. ACS has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and the FLSA Collective.

109. Because ACS' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

110. As a result of ACS' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied overtime compensation in accordance with 29 U.S.C. §§ 201 *et seq*.

111. As a result of the unlawful acts of ACS, Plaintiffs and the FLSA Collective have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

## SECOND CAUSE OF ACTION
### Indiana Wage Payment Act – Unpaid Wages
**(Brought on behalf of Plaintiffs and the members of the Rule 23 Class)**

112. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

113. At all times relevant, Plaintiffs and the Rule 23 Class have been employees within the definition of the definition of the Indiana WPA.

114. At all times relevant, ACS employed Plaintiffs and the Rule 23 Class within the definition of the Indiana WPA.

115. ACS engaged in a widespread pattern, policy, and practice of violating the Indiana WPA, as detailed in this Complaint.

116. ACS violated the Indiana WPA, in relevant part, by failing to pay Plaintiffs and the Rule 23 Class all wages owed within the time period prescribed by the Indiana WPA, Indiana Code 22-2-5-1.

117. Based on the foregoing, Plaintiffs and the Rule 23 Class are entitled to recover all unpaid wages, plus double the amount of wages due, plus all attorneys' fees, costs, and expenses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court grant the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to the FLSA Collective (as defined above). Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit, among other things;

B. Unpaid minimum wages, overtime wages and additional and equal amounts as liquidated damages pursuant to the 29 U.S.C. §§ 201 *et seq*., and the supporting United States Department of Labor regulations;

C. All unpaid wages, plus double the amount of wages due, pursuant to the Indiana WPA;

D. Pre-judgment interest and post-judgment interest as provided by federal law;

E. Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining ACS from continuing their unlawful practices and/or a declaration that ACS' acts violate the law;

F. Reasonable incentive awards for the named Plaintiffs to compensate them for the time and effort they have spent and will spend protecting the interests of the FLSA Collective and Rule 23 Class, and for the risks they took in doing so;

G. Attorneys' fees and costs of the action; and

H. Such other relief as the Court deems just and proper.

Dated: March 5, 2019

                    Respectfully submitted,

**COHEN & MALAD, LLP**

By: /s/Richard E. Shevitz
Richard E. Shevitz (#12007-49)
Scott D. Gilchrist (#16720-53)
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
Fax: (317) 636-2593
rshevitz@cohenandmalad.com
sgilchrist@cohenandmalad.com

**OUTTEN & GOLDEN LLP**
Molly Brooks*
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Fax: (646) 509-2060

*pro hac vice motion forthcoming*

*Attorneys for Plaintiffs and the Putative Collective*