UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH GALLANT, <br> TINA HASENOUR, <br> SUSAN BLANKENBERGER individually <br> and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ARROW CONSULTATION SERVICES, INC., <br><br> Defendant. | No. 1:19-cv-00925-SEB-MPB |

**ORDER APPROVING PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, SERVICE PAYMENTS, AND ATTORNEYS' FEES AND COSTS [DKT. 57]**

Now before the Court is Plaintiffs' unopposed motion to approve the parties' settlement of this putative collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203 *et seq.* Dkt. 113. For the reasons explicated below, the motion is **granted.**

## Background

On March 5, 2019, Plaintiffs Joseph Gallant, Tina Hasenour, and Susan Blankenberger brought this action on behalf of themselves and others similarly situated, whom we collectively refer to as "Plaintiffs" unless context requires otherwise. The complaint alleges that Plaintiffs are or were employed by Defendant Arrow Consultation Services, Inc. as "Home Managers" in Indiana from October 27, 2013 to the present. The complaint further avers that Defendant improperly classified Plaintiffs as exempt from

1

the FLSA's overtime pay rules and paid them either no or inadequate wages for the hours they performed in excess of forty hours per week. This lawsuit seeks to recover the unpaid overtime compensation Plaintiffs allege they are due under the FLSA.

On December 23, 2019, we received notice that a settlement had been reached among the parties in this matter. They have now jointly moved for judicial approval of their Collective Action Settlement Agreement (the "Settlement Agreement").

## Analysis

### I. Final Certification of the Collective Class is Appropriate

On April 8, 2019, our court conditionally certified this action as a collective action under the FLSA, 29 U.S.C. § 216(b). [Dkt. 20]. The conditionally certified collective class has been defined as follows: "All persons who are or were employed by Defendant as Home Managers in Indiana at any time from October 27, 2013, to the present."[1] Notice was sent by the named Plaintiffs to eligible members of the certified collective, giving them an opportunity to opt-in to this lawsuit. We are informed that, to date, eighteen individuals have opted in.

"Where the parties reach settlement after a court has conditionally certified a collective class, the court still must make some final class certification before approving a collective action settlement." *Burkholder v. City of Fort Wayne*, 750 F. Supp. 2d 990, 993 (N.D. Ind. 2010) (internal quotations, citation omitted) (collecting cases). As explained in

---

[1] This group includes 43 current and former employees.

our April 8, 2019 Order, Plaintiffs have succeeded in showing that the proposed collective members are similarly situated, based on evidence that:

> (1) there are other of Defendant's employees who share or shared Plaintiffs' job title, "Home Managers"; (2) that job title was uniformly classified as exempt from the FLSA's overtime requirements by Defendant; (3) employees holding that job title performed basically identical duties; and (4) employees holding that job title were centrally controlled and compensated by Defendant according to a single policy.

[Dkt. 20, at 2-3]. The parties now jointly assert that the discovery, which was undertaken following entry of the conditional certification, confirms our previous finding that the proposed settlement collective members are similarly situated. Accordingly, final certification of the collective is appropriate at this time. *Clemens v. Stericycle*, No. 1:15-cv-01432-SEB-MJD, 2016 WL 1054605, at *2 (S.D. Ind. Feb. 17, 2016) (Dinsmore, J.), *report and recommendation adopted*, 2016 WL 1045550, at *1 (S.D. Ind. Mar. 15, 2016) (Barker, J.) (holding that collective action plaintiff must show that collective members were "victims of a common policy or plan"); *Burkholder*, 750 F. Supp. 2d at 994 (concluding that final certification is appropriate where "there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies," and the defendants' "defenses would apply to *all* Plaintiffs"). Thus, the Eligible Settlement Collective Members are those current and former employees employed by Defendant as Home Managers from October 27, 2013, through the date of this Order. This includes those current and former Home Managers who have filed a Consent to Join Collective Action forms during the 216(b) notice period ("Opt-Ins") as well as the current and

3

former Home Managers who have not previously filed a Consent to Join forms ("Non Opt-Ins").

## II. The Settlement Agreement is Fair and Reasonable

FLSA collective action settlement agreements require judicial approval. "A one-step settlement approval process is appropriate" in FLSA collective actions. *Knox v. Jones Grp.*, 15-cv-1738 SEB-TAB, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) (collecting cases). "In other words, the Court can review and approve the settlement agreement without holding a final fairness hearing or adhering to the other requirements contained in Rule 23 of the Federal Rules of Civil Procedure." *Heuberger v. Smith*, No. 3:16-CV-386 JD, 2019 WL 3030312, at *2 (N.D. Ind. Jan. 4, 2019). "This is due to the fundamental differences between 'opt-in' collective actions and 'opt-out' class actions governed by Rule 23[.]" *Id.*

"Normally, a settlement is approved where it is the result of 'contentious arm's length negotiations, which were undertaken in good faith by counsel . . . and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Campbell v. Advantage Sales & Mktg. LLC*, No. 1:09-CV-01430-LJM, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (*quoting Burkholder*, 750 F. Supp. 2d at 995); *Sanders v. Connan's Paint & Body Shop, LLC*, No. 1:14-CV-01725-SEB, 2015 WL 5692542, at *4 (S.D. Ind. Sept. 28, 2015). Courts are required to determine the fairness of a collective action settlement agreement by assessing "whether the agreement reflects a reasonable

compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Burkholder*, 750 F. Supp. 2d at 995.

The Settlement Agreement at issue here calls for the establishment of a fund in the amount of $750,000 (the "Fund") from and against which Eligible Settlement Collective Members can claim entitlement to settlement awards. Settlement Collective Members will be eligible to receive settlement payments based on an allocation formula that takes into account the number of weeks each person worked during the relevant time period for which they were not paid overtime premium earnings for any hours they worked in excess of forty during those weeks. The allocation formula also takes into account the number of hours each person worked during the relevant time period in excess of his or her scheduled weekly hours. If the total calculated settlement amounts for all Eligible Settlement Participants exceeds $500,000, the resulting amounts shall form the basis for a pro rata distribution of the Fund. If the total calculated settlement amount is less than $500,000, each Eligible Settlement Participant's calculated settlement amount shall be paid, inclusive of interest, liquidated damages, and other non-wage relief. Any unused portion of the Fund shall revert to Defendant. [2]

---

[2] Employee payroll taxes and withholdings will be deducted when calculating Eligible Settlement Participants' entitlements. The parties agree that, for tax purposes, fifty percent of the payment to each Participating Collective Member shall be treated as back wages, subject to employee pay roll taxes and withholdings, and fifty percent shall be treated as interest, penalties, liquidated damages, and other non-wage relief. Defendant is responsible for the employer's share of payroll taxes associated with the settlement awards, up to $7500. If the employer's share of payroll taxes is greater than $7500, it shall be paid from the Fund.

The parties have engaged a Settlement Administrator[3] to mail notices of the settlement and settlement checks to all Eligible Settlement Participants within 30 days of the Settlement Agreement's Effective Date (that is, the later of either 31 days following our Order Granting Approval of the Settlement if no appeal is taken, or the entry of a final order and judgment after any appeals are resolved).[4] Eligible Settlement Participants will be allowed 120 days within which to negotiate their settlement checks (the "Acceptance Period"). A reminder postcard will be mailed to all Eligible Settlement Participants who have not cashed their checks by 45 days after the original settlement notices are mailed. Additionally, 60 days before the close of the Acceptance Period, the Settlement Administrator will provide Plaintiffs' counsel with a list of the names and contact information for all Eligible Settlement Participants who have not negotiated their settlement checks.

This agreement was reached following a comprehensive pre-suit investigation, private mediation and related discovery, and extensive settlement discussions during which the parties raised serious/disputed questions of law and fact.  In such circumstances, district courts typically have no trouble concluding that a settlement

---

[3] The Settlement Administrator, Analytics LLC, was selected by Plaintiffs' counsel subject to Defendant's concurrence. The parties agree that Analytics LLC's fees will be paid from the Fund.

[4] The parties agree that, within 14 business days of the Court's approval of the Settlement Agreement, Defendant will furnish to the Settlement Administrator a list of all Eligible Settlement Participants' names and contact information as well as (i) the average annual Home Manager Salary, (ii) the scheduled hours of all Eligible Settlement Participants, (iii) the actual hours each Eligible Settlement Participant worked (iv) the average hourly rate for hours worked beyond the scheduled weekly hours, and (v) extra compensation paid for additional work performed.

agreement was the result of "contentious arms-length negotiations." *Heuberger v. Smith*, No. 3:16-CV-386 JD, 2019 WL 3030312, at *3; *McAfee v. Hubbard*, No. 14-CV-1010-NJR-RJD, 2017 WL 1479304, at *3 (S.D. Ill. Apr. 25, 2017); *Sanders*, 2015 WL 5692542, at *4. Additionally, the parties agree that a trial on the merits would involve significant evidentiary risks for Plaintiffs in establishing both liability and damages. In light of those risks, agreeing to a settlement "is not indicative of overreaching by the employer or waiver of rights by the employees, but of a reasoned and counseled decision by both sides." *Heuberger*, 2019 WL 3030312, at *3; *Campbell*, 2012 WL 1424417, at *2.

The Motion also reflects that the parties' compromised agreement is the most effective method of notifying Eligible Settlement Participants of the settlement and their rights. The proposed Settlement Notices contain all the information on which the Court would typically rely in granting its approval: it informs Eligible Settlement Collective Members of the specific terms of the settlement, it explains the process by which members may participate (or not participate) in the settlement, it discloses the settlement payment amount to which each member is entitled, and it informs the members of the named Plaintiffs' request for attorneys' fees and costs.[5] *Koszyk v. Country Fin. a/k/a CC*

---

[5] The parties also appropriately tailored notices to those individuals who have already opted-in to this litigation as compared to those who have not. The proposed Settlement Notice for Opt-Ins will inform them of the nature of the dispute, the terms of the settlement, the amount of their settlement check, and the scope of the release.[5] The proposed Settlement Notice for Non-Opt-Ins will incorporate this information but further notify the Non-Opt-Ins they may participate in the settlement by signing and cashing their settlement checks. District courts in our circuit recognize this to be an appropriate opt-in mechanism. *Young v. Rolling in the Dough, Inc.*, 2020 WL 969616, at *2 (N.D. Ill. Feb. 27, 2020); *Sanchez v. Roka Akor Chicago LLC*, 2017 WL 1425837,

7

*Servs., Inc.,* No. 16 CIV. 3571, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016); *Zolkos v. Scriptfleet, Inc.,* No. 12 CIV. 8230 GF, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014). The proposed notices sufficiently inform Eligible Settlement Class Members of the details of the settlement and their rights under it and, accordingly, warrant our approval.

The parties have additionally requested judicial approval of specific payments to each of the three named Plaintiffs. Specifically, they propose a payment of $5000 to each of them, severally. Consistent with Seventh Circuit practice, these payments are sought here:

> Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit. In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.

*Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998). *See also Heekin v. Anthem, Inc.,* No. 1:05-CV-01908-TWP, 2012 WL 5878032, at *1 (S.D. Ind. Nov. 20, 2012).

These plaintiffs, we are informed, engaged in significant litigation activity (including participating in the investigations of the claims, assisting with the preparation of discovery responses, preparing for and attending mediations, and participating in depositions) for their own benefit as well as the benefit of the collective, expending time and other resources, and undertaking direct and indirect risks, such as possible retaliation.

---

at *2 (N.D. Ill. Apr. 20, 2017); *McCue v. MB Fin., Inc.*, 2015 WL 4522564, at *4 (N.D. Ill. July 23, 2015).

These contributions justify the requested payments. *Knox*, 2017 WL 3834929, at *2; *Hawkins v. Securitas Sec. Servs. USA, Inc.*, 280 F.R.D. 388, 395 (N.D. Ill. 2011). We conclude as well that the amounts requested are reasonable, both in terms of the outlays to be made to each plaintiff and the percentage (2%) they cumulatively represent of the total recovery amount. *Koszyk*, 2016 WL 5109196, at *3; *Chesemore v. All. Holdings, Inc.,* No. 09-CV-413-WMC, 2014 WL 4415919, at *12 (W.D. Wis. Sept. 5, 2014), aff'd sub nom. *Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016); *Heekin*, 2012 WL 5878032, at *1.

Finally, we address Plaintiffs' request for attorneys' fees and costs. Plaintiffs seek permission to allocate one-third of the Fund to cover attorneys' fees, plus reimbursement of $13,314.42 for attorneys' costs and expenses incurred in litigating this matter. District court judges are allowed considerable discretion in deciding whether to apply the lodestar approach to attorney fees awards or the percentage approach. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). We hold here that the percentage approach is reasonable, consistent with the parties' request.

The award of attorneys' fee must reflect "the market price for legal services, in light of the risk of nonpayment, and the normal rate of compensation in the market at the time." *Campbell*, 2012 WL 1424417, at *2. Here, the request of one-third of the amount of the Fund is in line with terms regularly approved by this and other federal district courts in our circuit. Additionally, we are aware that lawyers practicing employment law in this district and circuit routinely contract for fees equaling one-third of the overall recovery amount. *Campbell*, 2012 WL 1424417, at *2; *Brewer v. Molina Healthcare,*

9

*Inc.*, No. 1:16-CV-09523, 2018 WL 2966956, at *3 (N.D. Ill. June 12, 2018); *Heekin*, 2012 WL 5878032, at *3; *Williams v. Rohm & Haas Pension Plan*, No. 4:04-CV-0078-SEB-WGH, 2010 WL 4723725, at *1 (S.D. Ind. Nov. 12, 2010), aff'd, 658 F.3d 629 (7th Cir. 2011). That this fee structure was agreed upon at the outset of this litigation before the amount of the final recovery was set reinforces our confidence in its fairness. The Seventh Circuit routinely acknowledges that counsel accept a risk of nonpayment when they embark on representation of a class of plaintiffs on a contingency fee basis. *Sutton v. Bernard,* 504 F.3d 688, 694 (7th Cir. 2007); *see also Koszyk.,* 2016 WL 5109196, at *4. We therefore conclude Plaintiffs' request for attorneys' fees is reasonable under all the appropriate criteria. The request for reimbursement of costs and expenses in the amount of $13,314.42 likewise is reasonable, representing counsel's out-of-pocket costs and expenses incidental and necessary to litigating this matter, including coverage of pro hac vice admission fees, postage, mediator's fees, court fees, and research costs. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999); *Cheesman*, 2008 WL 2225617, at *3 (S.D. Ind. May 27, 2008).

## **CONCLUSIONS**

1. The Court finds that the proposed Settlement Agreement is fair, reasonable, adequate and just. It is therefore approved.

2. For settlement purposes only, the Court finds that final certification of the collective action is appropriate under Section 216(b) of the Fair Labor Standards Act.


3. Plaintiffs' proposed Notices of Settlement, and the plan for their distribution, are each approved.

4. The payments to the named individual plaintiffs in the specific amounts are approved.

5. Plaintiffs' request for payment of attorneys' fees and out-of-pocket costs and expenses in the amount specified is granted.

6. Upon the entry of dismissal without prejudice of this suit, the Court shall retain jurisdiction to enforce the settlement. Following notification by counsel of the completion of all the steps necessary to fully effectuate this settlement, dismissal shall become a dismissal with prejudice.

IT IS SO ORDERED.

Date: 5/4/2020

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Amy Joan Adolay
KRIEG DEVAULT LLP (Carmel)
aadolay@kdlegal.com

Molly Brooks
OUTTEN & GOLDEN LLP
mb@outtengolden.com

Rachel Williams Dempsey
OUTTEN & GOLDEN LLP
rdempsey@outtengolden.com

Tiaundra Marie Foster
KRIEG DEVAULT LLP
tfoster@kdlegal.com

Scott D. Gilchrist
COHEN & MALAD LLP
sgilchrist@cohenandmalad.com

Joshua D. Hague
KRIEG DEVAULT LLP (Indianapolis)
jhague@kdlegal.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com